UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FELICIA M. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00613-GCS |
| | ) |
| CHET L. SHAFFER, | ) |
| COUNTY OF FRANKLIN, ILLINOIS, | ) |
| FRANKLIN COUNTY SHERIFF'S | ) |
| OFFICE, | ) |
| and | ) |
| SHERRIF DAVID BARTONI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant County of Franklin, Illinois's Motion to Enforce Settlement between Plaintiff Felicia M. Hill and the County of Franklin, Illinois ("Franklin County"). (Doc. 56). Specifically, Defendant argues that there was an oral agreement to settle the case between Hill's former counsel, G. Patrick Murphy, and Defendant's counsel and that the terms of the settlement agreement were memorialized in a September 8, 2020 letter. Defendant contends that Hill developed second thoughts after the settlement agreement was entered and now desires to withdraw from the settlement. Hill opposes the motion. (Doc. 59). Based on the record before the Court, the applicable law and the reasons delineated below, the Court finds a hearing is not necessary and denies the motion to enforce.

On June 24, 2020, Hill filed a three-count complaint against Chet L. Shaffer and Franklin County. (Doc. 1). Hill alleges that on August 5, 2019, she was raped by Shaffer, who was a correctional officer at the Franklin County jail. Hill alleges that the rape occurred while she was handcuffed and shackled and when she was in custody in the Franklin County jail. Count I is a claim brought pursuant to 42 U.S.C. § 1983 against Shaffer. Count II is a claim against Franklin County alleging that she was incarcerated in the jail for approximately one month for the illegal possession of Xanax, which is a drug for which she had a lawful prescription. Hill further claims that Shaffer intentionally and unjustifiably interfered with her right to obtain review of the legality of her confinement. Count III is against Franklin County for negligently failing to supervise its employee, Shaffer.

On September 14, 2020, the Court held a status conference in this matter. (Doc. 27). Attorney G. Patrick Murphy appeared on behalf of Hill, and attorney Joseph Bleyer appeared on behalf of Franklin County. Per the minute entry, the Court, at the request of the parties set the matter for an in-person Status Conference on September 24, 2020. *Id*. On September 24, 2020, the Court held another status conference wherein attorneys Murphy and Megan O'Connor appeared for Hill. (Doc. 29). Mr. Bleyer appeared for Franklin County. *Id.* The minute entry also reflects that Mr. Murphy would be withdrawing from representing Hill and that Ms. O'Connor would be entering her appearance. *Id.* Mr. Bleyer indicated he would be filing a motion to enforce settlement within 14 days. *Id*. The next day, Mr. Murphy moved to withdraw. (Doc. 30). On September 28, 2020, Ms. O'Connor and Mr. Shawn Barnett entered their appearances on

behalf of Hill. (Doc. 31, 33). The Court granted Mr. Murphy's motion to withdraw that same day. (Doc. 32).

On January 15, 2021, Hill filed a motion for leave to file a First Amended Complaint. (Doc. 37). On February 1, 2021, the Court granted the motion as Defendants did not file an objection. (Doc. 38). Hill filed her First Amended Complaint that same day. (Doc. 39). On February 16, 2021, Franklin County filed a motion to dismiss. (Doc. 40). Hill filed a response in opposition to the motion on March 22, 2021. (Doc. 41).

On April 9, 2021, Franklin County filed a motion for leave to file a motion to enforce the settlement and to proceed with the deposition of Mr. Murphy. (Doc. 42). Hill filed her response in opposition on April 23, 2021. (Doc. 48). Thereafter, the Court set the matter for a status conference. (Doc. 50). A hearing on the motion was held on June 11, 2021. (Doc. 55). During the hearing, the Court denied at that time the motion to take the deposition of Mr. Murphy, granted the motion for extension of time to file a motion to enforce settlement, stayed the deadline to file a responsive pleading to the First Amended Complaint, and denied the pending motion to dismiss until the resolution of the motion to enforce settlement could be resolved. *Id.*

On July 14, 2021, Franklin County filed the motion to enforce settlement. (Doc. 56). Hill filed her response in opposition on August 8, 2021. (Doc. 59). Franklin County filed a reply in support on August 25, 2021. (Doc. 60). As the motion is ripe, the Court turns to address the merits.

## ANALYSIS

Defendant contends that on September 4, 2020, Mr. Bleyer and Mr. Murphy agreed to settle the case for $75,000.00 and that the terms of the settlement were set forth in a letter from Mr. Bleyer to Mr. Murphy. Defendant further contends that Mr. Murphy indicated that the settlement was only between Hill and Franklin County and that the claim against Defendant Shaffer would remain. According to Defendant, after the September 14, 2020 status conference, Mr. Bleyer received the settlement draft and prepared a release to be executed by Hill for the purpose of having the Release executed at the September 24, 2020 status conference. However, prior to the September 24, 2020 status conference, Hill discharged Mr. Murphy and hired new counsel. Hill counters that she terminated her relationship with former counsel on September 6, 2020. Hill also notes that she never agreed to any proposed settlement, that she was never made aware of any terms of the proposed settlement, and that she never accepted those terms. She further counters that there is no evidence presented by Defendant that Mr. Murphy accepted Mr. Bleyer's unilateral email as an accurate summary of their conversation nor is there any evidence that either Mr. Murphy or Hill agreed to any of the terms outlined in the proposed settlement agreement.

Settlement agreements are contracts and are interpreted according to the law of the jurisdiction in which the contract was allegedly created—here, the State of Illinois. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011); *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). As with any contract, there must be an offer to settle, an acceptance of the offer, and a meeting of the minds. *See Dillard v. Starcon Int'l,*

*Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *Kim v. Alvey, Inc.*, 749 N.E.2d 368, 378 (Ill. App. Ct. 2001). The material terms of the settlement agreement must be "definite and certain," so the Court can determine when a breach occurs. *Dillard*, 483 F.3d at 508-509. Specifically, a material term is a provision that goes to the "heart" of the settlement, as evidenced by the conduct of the parties during the settlement negotiations. *Id.* (noting that certain provisions are not "material as a matter of law," but rather depend on whether a party communicates during settlement negotiations that a specific term must be part of the agreement). Material terms are sufficiently definite when they enable a court to ascertain the agreement between the parties. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016).

It should further be noted that "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Beverly*, 817 F.3d at 333. This means that there must be some objective manifestation of the contract in order for it to be valid. *See Trapani Constr. Co., Inc. v. Elliot Group, Inc.*, 64 N.E.3d 132, 143 (Ill. App. Ct. 2016). Subjective intent is irrelevant. *See Dean v. REM Staffing*, No. 21-1875, 2021 WL 3783117, at *1 (7th Cir. Aug. 26, 2021). *See also Dillard*, 483 F.3d at 507 (stating that "[w]hether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs.") (citation omitted).

A threshold inquiry before determining the terms of an agreement, however, is whether an attorney who purportedly agreed to a settlement on behalf of a client had the express authority to do so. An attorney's representation of a client does not automatically

confer on the attorney the authority to compromise or settle the case. *See Brewer v. Nat'l R.R. Passenger Corp.*, 165 Ill.2d 100, 649 N.E.2d 1331, 1333-34 (Ill. 1995). Instead, the attorney must receive the client's "express authority" to settle. *Id.* at 1334. Under Illinois law, an attorney is not authorized to settle a client's claim absent the client's express authorization to do so. *See Magallanes v. Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (citations omitted). Importantly, "[a]n attorney's authority to agree to an out-of-court settlement will not be presumed and the burden of proof rests on the party alleging authority to show that fact." *Id. See also Schmalz v. Village of North Riverside*, No. 13-cv-8012, 2016 WL 6395586, at *3 (N.D. Ill. Oct. 28, 2016)(denying the defendants' motion to enforce settlement on the basis that defendants did not meet their burden of proving that plaintiff's counsel had the authority to accept the settlement offer on plaintiff's behalf); *Condon and Cook, L.L.C. v. Mavrakis,* 69 N.E.3d 274, 285 (Ill. App. Ct. 2016)(noting that a client would not be bound by an attorney's out-of-court settlement without proof of the client's express authorization, and the party alleging authority has the burden of proving that fact). In contrast, when a settlement occurs in court, the attorney's authority is presumed unless rebutted by affirmative evidence by the client that the attorney did not have the authority to settle. *See Millard v. BNSF Railway Co.,* No. 08-C-3752, 2010 WL 3515746, at *3 (N.D. Ill. Aug. 31, 2010). Thus, the Court must determine initially whether the purported settlement of this case was an in-court or out-of-court settlement, so it is clear who has the burden to show whether Hill's counsel had express authority to agree to a settlement on her behalf.

In the case at bar, the record clearly reflects that that purported settlement was out-of-court. Therefore, Defendant has the burden to prove affirmatively that Hill's former counsel had the express authority to settle the case on the terms proffered by Defendant. Based on the record, the Court finds Defendant has not come forth with affirmative proof that Mr. Murphy had the express authority to settle Hill's claim against it. To the contrary, Hill submitted a Declaration in her opposition to Defendant's motion to enforce in which she says, among other things, she did not speak to Mr. Murphy about settlement nor were the terms or scope of any potential settlement relayed or explained to her. (Doc. 59-1, ¶ ¶ 5, 6, 7). Hill goes on to declare: "[a]t no time did I sign any agreement to settle this litigation. At no time was I provided a copy of any proposed settlement agreement for this litigation." *Id.* at ¶¶8,9. Hill's evidence, as described above, is that she did not speak to Mr. Murphy about settlement, that she did not sign any settlement agreement, and that she did not make any statement on the record indicating that she had accepted any settlement offer.

In a Declaration filed in support of Defendant's motion to enforce settlement, Defendant's counsel states that on September 4, 2020, he, and Hill's former counsel Mr. Murphy "agreed to settle all issues against the County of Franklin, Illinois for $75,000.00. It was during this discussion Attorney G. Patrick Murphy stated the Plaintiff was not settling her claims against Chet Shaffer. The settlement of $75,000.00 is between the Franklin County Defendant and the Plaintiff, Felica Hill. . . ." (Doc. 56-1, ¶ 9). Defendant's counsel further states that he memorialized the settlement agreement with Mr. Murphy on September 8, 2020 in a letter. *Id.* at ¶ 10. The Court does not doubt defense counsel's

veracity or his version of events including his conversation with Hill's former counsel. However, that is still not enough in the Court's view for Defendant to meet its burden given what Hill says in her Declaration. The absence of any affirmative evidence in the record to show that Hill provided her counsel with express authority to agree to the settlement is fatal to Defendant's motion to enforce.

In the Defendant's reply memorandum, Franklin County again asks the Court for the opportunity to depose Mr. Murphy. (Doc. 60). Defense counsel specifically notes that it reached out to Mr. Murphy, but Mr. Murphy declined to provide an affidavit in light of his ethical responsibilities to his former client. (Doc. 60, ¶ 3). As such, Franklin County argues that it will be prejudiced if it does not have the opportunity to present evidence from Mr. Murphy. *Id.* at ¶ 4. Mr. Murphy correctly abstained from providing an affidavit to defense counsel because of the obligations imposed upon him by the attorney-client privilege. And, while the Defendant may indeed be prejudiced by not being allowed to present such evidence, the Court has no authority to cast aside the attorney-client privilege absent a waiver from Hill. Here, it appears that no such waiver has occurred as demonstrated by Hill's own declaration and from defense counsel's acknowledgement that Mr. Murphy refused to provide him with an affidavit.

Hill has also not waived the attorney-client privilege by defending against Franklin County's Motion to Enforce. Waivers of the attorney-client privilege are narrowly construed. *See Beneficial Franchise Co., Inc. v. Bank One, N.A., et al.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). Merely asserting a defense or a claim is insufficient to warrant finding a waiver of the privilege. *Id.* at 216-217. Indeed, the instant case is far removed

from the typical examples where the attorney-client privilege has been deemed waived. *See, e.g., Profit Point Tax Technologies, Inc. v. DPAD Group, LLP*, 336 F.R.D. 177, 181 (W.D. Wisc. 2020)(noting that classic examples include "where a party files a malpractice action against the lawyer, or where an alleged patent infringer relies on an advice of counsel defense to avoid a finding of willful infringement.").

It is true that a waiver can sometimes be found where "a party ***chooses*** to use privileged information to advance a claim or defense." *Beneficial*, 205 F.R.D. at 217 (emphasis added). That choice, however, is clearly absent in the instant case. Even if the affidavit filed by Hill could constitute a waiver (which the Court does not so expressly find), such a waiver was not by choice. Rather, it was foisted upon her by the actions of the Defendant in filing the motion to enforce. This is quite different from the situation where an individual makes a choice to sue his former attorney for malpractice. In such a scenario, it makes sense to find the privilege waived so that the privilege is not manipulated to the advantage of the party asserting the privilege. *See Beneficial*, 205 F.R.D. at 216 (citations omitted). Here, the Court refuses to find a waiver where the Plaintiff's hand was forced by the actions of an opposing party.

The Court also finds that there is no objective manifestation of Hill's intent to enter into the purported settlement agreement. While the record does contain a September 9, 2020 email from Defendant's counsel to Mr. Murphy consisting of a September 8, 2020 letter regarding the settlement, there is no response or acknowledgement by Mr. Murphy agreeing to that summary; in fact, there is no response at all. Moreover, Defendant offers nothing to establish that Hill either received or agreed to the proposed settlement, such

as a forwarded e-mail from Hill showing agreement to the terms. Indeed, the parties agree that there was no written manifestation of Hill's agreement as a written release was not executed. Although one is not required, some outward objective manifestation of an agreement to settle the case must be shown. *See, e.g.*, *Dean*, 2021 WL 3783117, at *1 (finding that defendant's email comprising the essential terms of an offer to settle with a response email from plaintiff of "I accept" was a sufficient objective manifestation of the parties' agreement to settle the matter). Absent evidence of any such objective manifestation from Hill, Franklin County's motion to enforce must be denied.

## Conclusion

Accordingly, the Court **DENIES** the motion to enforce settlement. (Doc. 56). The Court **ALLOWS** Defendants up to and including February 24, 2022 to file a response to the First Amended Complaint. Further, the Court **EXTENDS** the discovery deadline to July 25, 2022, the dispositive motion deadline to August 23, 2022 and the presumptive trial month to December 2022.

IT IS SO ORDERED.

DATED: February 3, 2022.

Digitally signed by Judge Sison 2
Date: 2022.02.03 09:29:01 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**